# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| | |
|---|---|
| **In re**<br><br>**THERESA A. SMITH-PENA,**<br><br>                    **Debtor**<br><br>─────────────────<br><br>**THERESA A. SMITH-PENA,**<br><br>                    **Plaintiff**<br><br>**v.**<br><br>**WELLS FARGO BANK, N.A., as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC2 Asset-Backed Pass Through Certificates,**<br><br>                    **Defendant** | **Chapter 13**<br>**Case No. 11-17355-FJB**<br><br><br><br>**Adversary Proceeding**<br>**No. 11-01317** |

## MEMORANDUM OF DECISION

**I.        INTRODUCTION**

The matter before me is the motion of the Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), to

dismiss the Plaintiff-Debtor's adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6),

made applicable to this proceeding by Fed. R. Bankr. P. 7012(b).  The Court has jurisdiction over this

matter pursuant to 28 U.S.C. § 1334(b) and may enter final judgment pursuant to 28 U.S.C. §

157(b)(2)(K) and LR, D. Mass 201.  For the reasons set forth below, I find that the Debtor has failed to

state a claim upon which relief can be granted.

## II.    FACTS and PROCEDURAL HISTORY

The parties appear to be in agreement as to all the facts relevant to deciding the present motion.[1]  The Debtor and her husband, Wesley A. Pena, have at all relevant times been the owners, as tenants by the entirety, of the real property located at 173 Lake Drive, Plymouth, Massachusetts (the "Property").  In 2006, they decided to enter into an agreement with New Century Mortgage Corporation ("New Century") to refinance the Property (the "Transaction").  On April 3, 2006, Wesley signed an adjustable rate note (the "Note") as "borrower" in favor of New Century.  The Note states: "In return for a loan that I have received, I promise to pay U.S. $290,000 (this amount is called "Principal"), plus interest, to the order of Lender."  The Debtor did not sign the Note.

The same day Wesley signed the Note, both he and the Debtor signed a mortgage (the "Mortgage").  The Mortgage grants New Century, its successors and assigns, the power to sell the Property and, as such, secures:

> (i)  the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this [Mortgage] and the Note.

---

[1] I include and will rely upon the language of the Note and Mortgage documents.  The Debtor's complaint references a note and mortgage, which were the basis of the Transaction from which Wells Fargo's legal obligations to the Debtor purportedly arose.  *See* Complaint [Docket Entry No. 1] ¶ 9.  Wells Fargo attached copies of a note and mortgage to its motion to dismiss.  *See Motion to Dismiss Adversary Proceeding* [Docket Entry No. 7].  Accordingly, in deciding the motion, I shall consider these documents.  *See Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."); *see also Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005) ("[T]he district court appropriately may consider the whole of a document integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint.").  Moreover, I am comfortable referring to the Note and Mortgage without first converting the proceeding into one for summary judgment under Fed. R. Civ. P. 56 because the Debtor included a copy of the Mortgage in her opposition to Wells Fargo's motion to dismiss and made specific arguments pertaining to the language of the Mortgage.  *See Opposition, Exh. A* [Docket Entry No. 12].  The Mortgage references the Note and the Debtor has not challenged the authenticity of either document.  Where a plaintiff has actual notice of documents extraneous to a complaint and has relied upon them in framing her complaint "the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."  *See Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding the district court properly considered public documents the plaintiffs attached in their opposition to a motion to dismiss).

The Mortgage defines the "Note" as "the promissory note signed by Borrower and dated April 3, 2006."

The "Loan" is "the debt evidenced by the Note."  The "covenants" the "Borrower" agrees to perform

include (i) the payment of principal and interest on the debt evidenced in the Note, (ii) payment of

taxes, assessments, and other items which can attain priority over the Lender's security interest, and (iii)

maintenance and adequate insurance of the Property.

The Mortgage defines the "Borrower" as both the Debtor and Wesley.  However, Section 13 of

the Mortgage entitled, "Joint and Several Liability; Co-signers; Successors and Assigns Bound" states:

> [A]ny Borrower who co-signs the [Mortgage] but does not execute the Note (a "co-
> signor"): (a) is co-signing this [Mortgage] only to mortgage, grant and convey the co-
> signer's interest in-the Property under the terms of this [Mortgage]; (b) is not personally
> obligated to pay the sums secured by this [Mortgage]; and (c) agrees that Lender and
> any other Borrower can agree to extend, modify, forbear or make any accommodations
> with regard to the terms of this [Mortgage] or the Note without the co-signer's consent.

The Debtor and Wesley also signed two "Adjustable Rate Riders" (the "Riders"), which were

"incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or

Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower")" to

secure repayment of the Note.  The amendments contained within the Riders govern how the interest

rate and monthly payment in the Note may change and what the Lender's rights are in the event a

Borrower transfers an interest in the Property.  The Riders do not create any additional obligations.

On August 2, 2011, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy

Code.[2]  Wells Fargo filed a proof of claim against the Debtor's bankruptcy estate (the "Claim").

Appended to the Claim is an "Assignment of Deed of Trust" purporting to assign New Century's interest

in the Note and Mortgage to Wells Fargo.  The Debtor objected to the Claim in her bankruptcy case and

commenced the present adversary proceeding against Wells Fargo on November 3, 2011.

---

[2] 11 U.S.C. § 101 *et seq.*

In her complaint, the Debtor seeks to rescind the Transaction that gave rise to Wells Fargo's

Claim pursuant to her rights under the Massachusetts Consumer Credit Cost Disclosure Act (the

"MCCCDA")[3] and also seeks damages related thereto.  The MCCCDA affords "obligors" the right to

rescind consumer credit transactions in certain circumstances and provides for damages as well as

attorney's fees in the event a lender fails to comply with its notice and disclosure requirements.[4]

In its motion to dismiss, Wells Fargo argues that, on the facts alleged, the Debtor is not an

"obligor" and, consequently, has no rights under the MCCCDA.[5]  The Debtor maintains that her role in

the Transaction gave her a right to rescind.  At a non-evidentiary hearing, the parties agreed the issue

boils down to one of law: whether the Debtor is an "obligor" within the meaning of the MCCCDA and its

accompanying regulations.  For the reasons set forth below, I conclude that she is not and, therefore,

that she has no claim under the MCCCDA for rescission or statutory damages arising from the

transaction with New Century.

## III.   DISCUSSION

### A.  Governing Standard

"With certain exceptions not relevant here, a complaint only needs to contain 'a short and plain

statement of the claim showing that the pleader is entitled to relief.'"  *Artuso v. Vertex Pharmaceuticals,*

*Inc.*, 637 F.3d 1, 4 (1st Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, a

---

[3] MASS. GEN. LAWS ch. 140D (2012).

[4] Wells Fargo does not dispute that whatever rights the Debtor has under the MCCCDA may be asserted against it as the assignee of New Century's interest in the Note and Mortgage.  *See* MASS. GEN. LAWS ch. 140D, § 33.

[5] Wells Fargo moves to dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6).  Although its motion does not elaborate on the ground for dismissal under 12(b)(1), I understand that ground to be a lack of constitutional standing.  Wells Fargo essentially contends that the Debtor is not an "obligor" within the meaning of the MCCCDA and therefore not a person whom that statute permits to seek rescission or the other relief requested in her complaint.  I find the Debtor has standing because, should she prove to be an "obligor" under the MCCCDA, she will have asserted an invasion of a legally protected interest, her ownership interest in the Property, that is both concrete and particularized.  *See Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 104 (1st Cir. 1995) (reciting the necessary elements to establish federal jurisdiction).  If she is not an "obligor," then her cause of action will fail, but not for lack of standing.  She herself has an interest that would be affected by this proceeding; therefore, whether or not she is entitled to the relief she seeks, she does not lack the constitutional standing necessary to seek it.

complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).

### B.   Applicable Law

The parties agree that the Transaction at issue in this case is a "consumer credit transaction"

subject to the MCCCDA.  The Massachusetts legislature enacted the MCCCDA to function as the State

analog to the federal Truth in Lending Act (the "TILA")[6], and its provisions track those of the TILA nearly

verbatim.  These provisions are supported by a set of regulations, which appear in section 32 of title 209

of the Code of Massachusetts Regulations (209 MASS. CODE REGS. 32 (2010)) and are practically identical

to their federal counterparts, which support the TILA (the federal regulations are referred to as

"Regulation Z") and are located at 12 C.F.R. § 226 (2012).  Therefore, there are two distinct bodies of

law: the MCCCDA and its regulations; and the TILA and Regulation Z.

In Massachusetts, the MCCCDA—and not the TILA—determines the rights and liabilities arising

from "consumer credit transactions."  The Board of Governors of the Federal Reserve System has

exempted credit transactions within Massachusetts subject to the MCCCDA from chapter two of the

TILA (which includes the rescission provision germane to the Debtor's claims).  *See* 15 U.S.C. § 1633; 12

C.F.R. § 226.29(a); 48 FR 14882, 14890 (Apr. 6, 1983); *see also Laudani v. Tribeca Lending Corp. (In re

Laudani)*, 401 B.R. 9, 25 n.13 (Bankr. D. Mass. 2009).  Nevertheless, because the Massachusetts

legislature closely modeled the MCCCDA after the TILA, the former is construed in accordance with the

latter.  *See McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir. 2007); *see also

Desrosiers v. Transamerica Fin. Corp.*, 212 B.R. 716, 222 n.6 (Bankr. D. Mass. 1997) (referring to the

provisions of the TILA and Regulation Z when deciding a claim under the MCCCDA because "they do not

differ from their Massachusetts counterparts in any material way").

---

[6] 15 U.S.C. § 1601 *et seq.*

Under § 10 of the MCCCDA, otherwise enforceable consumer credit transactions are subject to rescission as follows:

> Except as otherwise provided in this section, in the case of any consumer credit transaction, including opening or increasing the credit limit for an open-end-credit plan, in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction[.]

MASS. GEN. LAWS ch. 140D, § 10(a).  This section gives an "obligor" a right to rescind a consumer credit transaction that features a security interest in the principal dwelling of the person to whom credit is extended.  Once an obligor rescinds the transaction, "he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission."  MASS. GEN. LAWS ch. 140D, § 10(b).

The MCCCDA does not define "obligor."  Neither do the MCCCDA regulations.  The portion of the regulations covering rescission under § 10 refers to the "consumer's right to rescind."  *See* 209 MASS. CODE REGS. 32.15(1) and 32.23(1).  The regulations define "consumer" to include "a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest."  209 MASS. CODE REGS. 32.02(1).  Accordingly, a person will be a "consumer" if (1) he or she has an ownership interest in the dwelling and (2) that ownership interest is subject to the security interest.  Moreover, the regulations give all such "consumers" the right to rescind:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction . . . .

209 MASS. CODE REGS. 32.23(1)(a).  The regulations require the creditor to deliver notice of the right to rescind to "each consumer entitled to rescind."  209 MASS. CODE REGS. 32.23(2)(a).

The right to rescind exists until midnight of the third business day following consummation of the transaction or the date that the creditor delivers to the obligor the "information" and "rescission

forms" required by § 10(a) and the "material disclosures" described elsewhere in the MCCCDA,

whichever is later.  *See* Mass. Gen. Laws ch. 140D, § 10(a).[7]  The creditor must provide the required

information, rescission forms, and material disclosures to each "obligor."  *See* Mass. Gen. Laws ch. 140D,

§ 7.  A creditor who fails to do so is liable for damages and attorney's fees.  *See* Mass. Gen. Laws ch.

140D, § 32.

### C.   The Parties' Positions

In her complaint, the Debtor alleges that she was never provided with the material disclosures

or notices of her right to rescind and, therefore, that she has a continuing right to rescind the

transaction and may also pursue Wells Fargo for damages and attorney's fees.  Wells Fargo argues that

the Debtor is not an "obligor" within the meaning of Mass. Gen. Laws ch. 140D, § 10 because she never

signed the Note and, therefore, that § 10 did not require New Century to provide her with notice;

consequently, Wells Fargo concludes, she has no standing to pursue this adversary proceeding.

Arguing that an "obligor" must be obligated on the Note, Wells Fargo relies chiefly on the one

case in this district that dealt with this issue, *Ferreira v. Mortg. Elec. Registration. Sys., Inc.*, 794 F. Supp.

2d 297 (D. Mass. 2011).[8]  In *Ferreira*, the district court understood "obligor" to refer to "the person to

whom credit is extended" and held that an individual who is not named on the promissory note is not an

obligor and does not have a right to rescind under the MCCCDA.  *See* 794 F. Supp. 2d at 302-03.

In her opposition to the motion to dismiss, the Debtor argues that "obligor" must be interpreted

in the context of rescission as it is described in 209 Mass. Code Regs. 32.  At the hearing, the Debtor

---

[7] In no event does a right of rescission exceed four years from the consummation of the transaction.  *See* Mass. Gen. Laws ch. 140D, § 10(f); *O'Connell v. Wells Fargo Bak, N.A. (In re O'Connell)*, 2012 WL 2685149, at *4 (Bankr. D. Mass. July 6, 2012).

[8] Several decisions in other districts (none of which greatly elaborate on their reasons) reach the same result under the TILA.  *See Falkiner v. OneWest Bank*, 780 F. Supp. 2d 460, 463-64 (E.D. Va. 2011); *Wilson v. JPMorgan Chase Bank, N.A.*, No. CIV. 2:09-863 WBS GGH, 2010 WL 2574032, at *6 (E.D. Cal. June 25, 2010); *Moazed v. First Union Mortgage Corp.*, 319 F. Supp. 2d 268, 273 n.4 (D. Conn. 2004).

7

argued that the regulation's use of the word "consumer" is meant to serve as the functional equivalent

of the term "obligor."  As a natural person whose ownership interest in the Property is subject to Wells

Fargo's security interest, the Debtor is a "consumer" within the meaning of 209 MASS. CODE REGS.

32.02(1) and has a right of rescission under 209 MASS. CODE REGS. 32.23(1)(a).  In support of this position,

the Debtor relies on *Apgar v. Homeside Lending, Inc. (In re Apgar)*, in which the bankruptcy court found

a debtor-husband's wife had rescission rights under the TILA, despite the fact that she had not signed

the promissory note.  *See* 291 B.R. 665, 669-70 (Bankr. E.D. Pa. 2003).  In *Apgar*, the Court noted that

"statutory analysis is not enough" and relied on the term "consumer" as used in Regulation Z to

conclude the wife had a right to rescind.  *See id.* at 670.[9]

Wells Fargo acknowledges that 209 MASS. CODE REGS. 32.23 gives a rescission right to each

"consumer" whose ownership interest in his or her principal dwelling is subject to the security interest.

It argues, however, that the regulation constitutes an impermissible construction of the rescission right

given to "obligors" under the MCCCDA and, therefore, that the regulation as written is invalid as applied

to those who, like the Debtor, gave the creditor a mortgage but incurred no in personam liability in the

transaction.

### D.  Analysis

Seeking guidance on this issue, I have looked beyond this district's *Ferreira* decision to cases

interpreting the TILA and Regulation Z.  The cases that agree with the Debtor's requested result find a

right to rescind in the provisions of Regulation Z.  *See, e.g., Apgar*, 291 B.R. at 670; *Jones v. Novastar*

*Mortgage, Inc. (In re Jones)*, 298 B.R. 451, 458 (Bankr. D. Kan. 2003).  Cases favoring Wells Fargo's

position restrict themselves to the term "obligor" as used in the TILA.  *See, e.g., Moazed v. First Union*

*Mortg. Co.*, 319 F. Supp. 2d 268, 273 n.4 (D. Conn. 2004); *Falkiner*, 780 F. Supp. 2d at 463-64.  None of

---

[9] Like 209 MASS. CODE REGS. 32.23, Regulation Z gives "each consumer whose ownership interest is or will be subject to the security interest" the right to rescind the transaction and mandates that creditors provide the required disclosures to "each consumer who has the right to rescind."  *See* 12 C.F.R. §§ 226.23(a)(1) and 226.17(d).

the cases attempt to reconcile Regulation Z's "consumer" with the TILA's "obligor." And yet that is

precisely what must be done to resolve the present matter because, if and to the extent that 209 MASS.

CODE REGS. 32 exceeds what the MCCCDA authorizes, it is invalid and unenforceable.

### 1.   The Meaning of "Obligor" in the MCCCDA

I begin with MASS. GEN. LAWS ch. 140D.  Section 10 provides that "the *obligor* shall have the right

to rescind the transaction," and it requires the creditor to "clearly and conspicuously disclose, in

accordance with regulations of the commissioner, to any *obligor* in a transaction subject to this section

the rights of the *obligor* under this section."  MASS. GEN LAWS ch. 140D, § 10(a) (emphasis added).

Section 7 requires the creditor to "disclose to the person who is *obligated* on a consumer credit

transaction the information required under this chapter."  MASS. GEN. LAWS ch. 140D, § 7(a) (emphasis

added).  Therefore, in order to determine whether the Debtor has rights under the MCCCDA, I must first

determine who is an "obligor."

The Massachusetts legislature has enacted rules of statutory construction.  MASS. GEN. LAWS ch.

4, § 6 provides in relevant part:

> In construing statutes the following rules shall be observed, unless their observance
> would involve a construction inconsistent with the manifest intent of the law-making
> body or repugnant to the context of the same statute:
> . . .
> Words and phrases shall be construed according to the common and approved usage of
> the language; but technical words and phrases and such others as may have acquired a
> peculiar and appropriate meaning in law shall be construed and understood according
> to such meaning.

Expounding on statutory interpretation, the Supreme Judicial Court has announced that "[n]one of the

words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without

overemphasizing its effect upon other terms appearing in the statute, so that the enactment considered

as a whole shall constitute a consistent and harmonious provision capable of effectuating the presumed

intention of the Legislature."  *See Com. v. Woods Hole, Martha's Vineyard and Nantucket S.S. Authority,*

352 Mass. 617, 618 (1967).  "[S]tatutory language, when clear and unambiguous, must be given its

ordinary meaning." *Casey v. Massachusetts Elec. Co.*, 392 Mass. 876, 880 (1984) (quoting *Bronstein v.*

*Prudential Ins. Co.*, 390 Mass. 701, 704 (1984).  Massachusetts courts derive a word's usual and

accepted meaning from sources presumably known to the statute's enactors, such as their use in other

legal contexts and dictionary definitions.  *See Com. v. Welch*, 444 Mass. 80, 85 (2005), *abrogated in part*

*on other grounds by O'Brien v. Borowski*, 461 Mass. 415, 425 n.7 (2012).  In ascertaining legislative

intent, I must consider the literal meaning of the statutory language, but may also consider "the whole

system of which it is but a part, and the common law or previous statutes on the same subject."  *See*

*Killam v. March*, 316 Mass. 646, 650 (1944) (internal quotations omitted).  Lastly, I am reminded that, as

a consumer protection statute, the MCCCDA is to be "liberally construed" to carry out its purpose.  *See*

*Fuller v. Deutsche Bank Nat'l Trust Co. (In re Fuller)*, 642 F.3d 240, 243 (1st Cir. 2011) (quoting *Shepard v.*

*Fin. Assocs. of Auburn, Inc.*, 366 Mass. 182, 191 (1974)).

Turning to the statute, § 10 describes the entire rescission process.  The right of rescission is

limited as follows:

> [I]n the case of any consumer credit transaction . . . in which a security interest . . . is or
> will be retained or acquired in any property which is used as the principal dwelling of
> the person to whom credit is extended, the obligor shall have the right to rescind the
> transaction . . . .

MASS. GEN. LAWS ch. 140D, § 10(a).  In addition to the creditor, the text mentions three categories of

persons that are necessary for a transaction that is subject to rescission: 1) the person who grants the

security interest; 2) the person to whom credit is extended; and 3) the obligor.  The obligor may or may

not wear all three "hats" in a particular transaction, but only an obligor may rescind.  Conversely, it does

not appear that the obligor needs to be the person who grants the security interest.  A security interest

must be present, and the security must be the primary dwelling of the person to whom credit is

extended, but the statute does not specify who must grant that interest.

Once an obligor rescinds, "any security interest given by the obligor . . . becomes void upon such a rescission."  MASS. GEN. LAWS ch. 140D, § 10(b).  The word "any" signals that the statute as drafted contemplates situations where the obligor might not have granted the security interest.  Therefore, the granting of a security interest is neither necessary nor sufficient to make someone an "obligor."

Sections 33 and 35 of the MCCCDA provide more on how to interpret the term "obligor."  Section 33(c) gives "any consumer who has the right to rescind a transaction under section ten" the right to rescind against any "assignee of the obligation."  MASS. GEN LAWS ch. 140D, § 33(c).  Section 33(c) refers to a *type* of consumer; namely, one who may rescind under § 10.  Section 10 refers only to "obligors."  Section 35 limits creditors' liability and "consumer rescission rights."  MASS. GEN. LAWS ch. 140D, § 35.  For consumer credit transactions consummated before September 13, 1995, "a consumer shall have no extended rescission rights under section 10 with respect to . . . the form of written notice used by the creditor to inform the *obligor* of *the rights of the obligor under the provisions of section ten* if the creditor provided the *obligor* with a properly dated form of written notice . . . and otherwise complied with all the requirements of this chapter regarding notice . . . ."  MASS. GEN LAWS ch. 140D, § 35(a)(2) (emphasis added).  Because these sections refer to both "consumers" and "obligors," I conclude that these terms must refer to different categories of persons and that an "obligor" is a subset of "consumer."  *See Hallett v. Contributory Retirement Appeal Bd.*, 431 Mass. 66, 69 (2000) ("All words, clauses, and parts of a legislative enactment should be given force and effect and no part is to be brushed aside unless no other rational course is open.").

Since the MCCCDA does not expressly define "obligor," I look to other sources.  An "obligor" is "one who has undertaken an obligation; a promisor or debtor."  *Black's Law Dictionary* 1181 (9th ed. 2009); *see also Black's Law Dictionary* 1076 (6th ed. 1990) (defining obligor as a "[p]erson obligated under a contract or bond[]'').  This definition implies the presence of *in personam* liability and does not include someone who has merely pledged property.  The ninth edition of *Black's* also directs me to the

definition of "obligor" contained in Article 9 ("Secured Transactions") of the Uniform Commercial Code.

*See* 1181.  The Massachusetts Uniform Commercial Code (the "UCC") defines "obligor" as follows:

> a person that, with respect to an obligation secured by a security interest in or an
> agricultural lien on the collateral, (i) owes payment or other performance of the
> obligation, (ii) has provided property other than the collateral to secure payment or
> other performance of the obligation, or (iii) is otherwise accountable in whole or in part
> for payment or other performance of the obligation.

MASS. GEN. LAWS ch. 106, § 9-102(a)(59).  Although the definition of "obligor" in the UCC is not binding

when interpreting the MCCCDA, it is instructive where both statutes concern the extension of secured

credit.  *See Department of Youth Services v. A Juvenile*, 398 Mass. 516, 523 (1986) (referring to the more

explicit definitions of similar words and phrases in one statute in order to construe another statute

where both statutes were concerned with the same general subject matter); *Com. v. Baker*, 368 Mass.

58, 69 (1975) ("In regard to whether a bail bond is a 'security' within the meaning of [the statute], we

are urged by another principle of statutory construction to refer to definitions given the same word

where it has appeared in other statutes under review.").  The UCC defines an "obligor" as one who "has

provided property *other than the collateral* to secure payment," signaling that merely granting a security

interest, without more, does not make one an "obligor" with respect to the secured transaction.

Similarly, a person does not become an "obligor" when they grant a mortgage in connection with a

consumer credit transaction subject to MASS. GEN. LAWS ch. 140D, § 10.  When one executes a mortgage,

one conveys title of the mortgaged property to the mortgagee.  *See Faneuil Investors Group v. Board of

Selectmen of Dennis*, 458 Mass. 1, 6 (2010).  This conveyance is "defeasible upon the payment of money

or the performance of some other condition," *see id.* (quoting *Perry v. Miller*, 330 Mass. 261, 263 (1953),

but it does not, in and of itself, *obligate* the mortgagor to perform additional acts.  Accordingly, to be an

"obligor" under MASS. GEN. LAWS ch. 140D, § 10, one must have incurred an obligation with respect to

the consumer credit transaction.

12

This interpretation comports with the common understanding of an act of "rescission," as "a party's unilateral unmaking of a contract for a legally sufficient reason" or "an agreement by contracting parties to discharge all remaining duties of performance and terminate the contract." *Black's Law Dictionary* 1420-21 (9th ed. 2009).  In order to rescind, one must have a duty to perform.  Rescission is a contractual remedy, relating to contractual liability, which is *in personam*.

I am satisfied that interpreting "obligor" to mean one who incurs an obligation in connection with the transaction is not "inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute."  MASS. GEN LAWS ch. 4, § 6.  The TILA contains a declaration explaining its purpose (the "Declaration of Purpose") is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a).  This provision makes clear that the TILA governs the relationship between creditors and consumers of credit who incur obligations on account of the credit extended (either by borrowing themselves or arranging for a creditor to extend credit to a third party). This purpose is manifest in the congressional record.  The hearings on TILA are replete with the terms "borrower," "consumer," and "buyer," which the witnesses use interchangeably to refer to persons who incur obligations in connection with the extension of credit.[10]  Although the Massachusetts legislature did not expressly adopt the TILA's Declaration of Purpose, courts have cited to it when explaining the purpose of the MCCCDA.  *See, e.g., Giza v. Amcap Mortgage, Inc. (In re Giza)*, 428 B.R. 266, 271 (Bankr. D. Mass. 2010).

---

[10] *See, e.g.*, 107 CONG. REC. 6427 (daily ed. Apr. 27, 1961) ("Every borrower should have the right to full knowledge of the terms and contents of credit contracts . . . ." (internal quotation marks omitted)); 113 CONG. REC. E3479 (daily ed. Apr. 29, 1968) (noting the "three-day 'cooling off' period—or, rather a three-day 'shop around' period—during which consumers who are asked to sign a mortgage on their home would have a chance to give full consideration to the seriousness of such a transaction and to investigate alternative ways of obtaining credit"); 113 CONG. REC. H4127 (daily ed. May 22, 1968) ("The final version of it now is that the buyer has three days grace in which to look over what he had signed, after he was told that he was signing a mortgage.  Then if he decided that he did not want to go through with it, he could rescind it.").

The language of the MCCCDA indicates a similar purpose to that articulated at the TILA

hearings.[11] At different points in the statute the MCCCDA refers to "borrowers," "debtors,"

"consumers," "customers," and "obligors." Although these terms are undefined, they always appear in

the context of a credit relationship. The MCCCDA requires creditors to provide numerous statements

and disclosures to persons with whom they have a credit relationship. Section 7 requires a creditor to

"disclose to the person who is obligated on a consumer credit transaction the information required

under this chapter." MASS. GEN. LAWS ch. 140D, § 7(a). Part of this "information" is a "finance charge,"

which includes "[b]orrower-paid mortgage broker fees" and insurance premiums, unless "the coverage

of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit."

MASS. GEN. LAWS ch. 140D, § 4. Section 11 requires the creditor to make several disclosures to "the

person to whom credit is extended," including "a statement that a security interest has been or will be

taken" and "a statement . . . of the protection provided by section twenty-nine . . . to an obligor and the

creditor's responsibilities under said section." MASS. GEN. LAWS ch. 140D, § 11. Section 12 allows

"consumers" to obtain from the creditor an "itemization of the amount financed," which includes "the

amount that is or shall be credited to the consumer's account to discharge obligation owed to the

creditor" and "each amount that is or shall be paid to third persons by the creditor on the consumer's

behalf." MASS. GEN. LAWS ch. 140D, § 12(a)(2)(B). Although a uniform term is lacking, it is apparent that

the MCCCDA as a whole governs the relationship between creditors and persons who will become

responsible to perform some action as a result of the transaction, and that the statute is chiefly

concerned with ensuring that the "borrower," "consumer," "customer," "debtor," or "obligor" is

informed of the terms under which credit is extended.

---

[11] In fact, the three-day rescission period that Congress eventually enacted in 15 U.S.C. § 1635, was influenced by an earlier Massachusetts law. *See* 113 Cong. Rec. A4214 (daily ed. Aug. 18, 1967) ("In Massachusetts the consumer is given 24 hours in which to rescind the contract in direct selling.").

In this case, the Debtor lacked a relationship with either New Century or Wells Fargo that would give her the status of an "obligor" entitled to rescind under the MCCCDA.  Because she did not sign the Note, she incurred no obligations in connection with the Transaction.  She did not *receive* anything from New Century either and, therefore, rescission would accomplish nothing vis-a-vis Wells Fargo. [12] Although she points out that the Mortgage sets forth its own "covenants" upon which the "borrower" is obligated, Section 13 of the Mortgage exempts the Debtor from performing these covenants and states that her signature is limited to effectuating the transfer of her interest in the Property to New Century.  When the Debtor signed the Mortgage, she gave New Century security on the obligations contained in the Note and Mortgage, but the responsibility for performing those obligations rested with her husband, the sole signatory on the Note.

The MCCCDA did not require New Century to make disclosures to the Debtor.  Section 10 of the MCCCDA governs the relationship between creditors and those who incur obligations in connection with the transaction.  It does not govern the relationship between the latter and co-signatories on the mortgage.[13]  Any benefit the Debtor may have received from the Transaction is not enough to make her an "obligor" either.  The MCCCDA does not require creditors to make disclosures to the beneficiaries of

---

[12] In *In re Stanley*, the bankruptcy court characterized rescission under the TILA as a remedy that restores the *status quo ante*.  315 B.R. 602, 615 (Bankr. D. Kan. 2004).  In this case, the Debtor received nothing from New Century.  Her bankruptcy schedules do not list a debt owed.  Where she has received nothing and promised nothing in return, I am at a loss to identify what the Debtor would rescind.  She has parted with something by granting a mortgage.  But rescission is predicated on having a duty to perform, is commonly accompanied by restitution of any partial performance, and restores parties to their precontractual positions.  *See Black's Law Dictionary* 1181 (9th ed. 2009).  Rescission is not the same as voiding a security interest, (*see* Part III, D, 1 *supra*), although MASS. GEN. LAWS ch. 140D, § 10(b) does provide that once the obligor has rescinded, the creditor "shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."

[13] At least one court has recognized a co-mortgagor's standing to bring suit for TILA violations under the theory that she was "inextricably bound to the transaction at issue."  *See Villareal v. Snow*, No. 95-C-2484, 1996 WL 28282, at *5 (N.D. Ill. Jan. 19, 1996).  In that case, the court allowed a co-mortgagor to claim statutory damages where the lender had failed to make the required disclosures to the obligor.  *See id.* at *1.  The court reasoned that "other persons bound to a transaction may reasonably expect that the primary obligor had the benefit of disclosures that fully complied with TILA requirements when entering into the transaction."  *Id.* at *4.  The plaintiff's claims in *Villareal* can be distinguished from the present case in that they derived from alleged inadequate disclosure to the obligor.  Here, the Debtor does not allege that Wesley did not receive the notices and disclosures, but rather that *she* was entitled to such and did not receive them.

a credit transaction.  Rather, it makes creditors liable to persons who are readily ascertainable: those who, by their signatures on the loan documents, have incurred obligations and against whom the creditors may seek legal remedies.

### 2.   The Meaning of "Consumer" in the Regulations

Having concluded that "obligor" means a person who has incurred an obligation in connection with the consumer credit transaction, I turn to the regulations.  Subject to an exception not relevant here, the regulations provide that "[i]n a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction."  209 MASS. CODE REGS. 32.23(1)(a).  The creditor is to deliver notice of the right to rescind "to each consumer entitled to rescind."  209 MASS. CODE REGS. 32.23(2)(a).  The regulations define "consumer" as "a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest."  209 MASS. CODE REGS. 32.02(1).

I find that the Debtor is a "consumer" within the meaning of 209 MASS. CODE REGS. 32.02(1) by virtue of her mortgaged interest in the Property.  Accordingly, if they are enforceable against one who gave a mortgage but did not incur any obligation on the transaction, the regulations would give the Debtor a right to rescind the transaction, and New Century would have had to provide her with notice of this right.

### 3.   The Validity of the Regulations

"Regulations are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate."  *Smith v. Comm'r of Transitional Assistance*, 431 Mass. 638, 646 (2000) (quoting *Dowell v. Comm'r of Transitional Assistance*, 424 Mass. 610, 613 (1992)).  An administrative agency promulgates regulations to "implement or interpret the law enforced or administered by it," MASS. GEN. LAWS ch. 30A, § 1(5), and "has only the powers and duties

16

expressly or impliedly conferred on it by statute." *See Matter of Elec. Mut. Liab. Ins. Co., Ltd. (No. 1)*,

426 Mass. 362, 366 (1998). The MCCCDA authorizes the Commissioner of Banks (the "Commissioner")

to prescribe regulations that are "necessary or proper" to carry out the MCCCDA's provisions. Mass.

Gen. Laws ch. 140D, § 3(a). The Commissioner's interpretation of the MCCCDA is granted "substantial

deference," although where the interpretation runs contrary to the plain language of the statute no

deference is warranted. *See Swift v. AutoZone, Inc.*, 441 Mass. 443, 450 (2004).

The Debtor argues that I should read "consumer" as defined in 209 Mass. Code Regs. 32 as the

de facto definition of "obligor." This construction is not possible as the regulations themselves define

"obligor" elsewhere as a "borrower, co-borrower, cosigner, or guarantor obligated to repay a home

mortgage loan" showing the Commissioner understood "obligor" to differ from "consumer." 209 Mass.

Code Regs. 32.32(2)(j); *see also Massachusetts Hosp. Ass'n, Inc. v. Dept. of Medical Sec.*, 412 Mass. 340,

346 (1992) ("That the department appreciates this meaning of "criteria" is evident from the fact that it

used that term in its regulations dealing with hospital credit and collection policies.").

Insofar as it gives the Debtor a rescission right on account of her status as a mortgagor, 209

Mass. Code Regs. 32 exceeds the scope of Mass. Gen Laws ch. 140D, § 10 and, therefore, cannot be

enforced. *See Massachusetts Hosp. Ass'n, Inc.*, 412 Mass. at 346. As I find in Part III, D, 1 *supra*, the

statute grants a rescission right to the "obligor": the person who incurs an obligation in connection with

the credit transaction. In contrast, the regulations base rescission on the presence of an "ownership

interest in the dwelling [that] will be subject to the security interest." *See* 209 Mass. Code Regs.

32.23(1). This position cannot find support in any reasonable construction of the plain language of

Mass. Gen. Laws ch. 140D, § 10. As written, 209 Mass. Code Regs. 32 allows rescission by consumers who

have not signed promissory notes or otherwise incurred obligations in connection with the consumer

credit transaction. In some instances, the rescission right described in 209 Mass. Code Regs. 32.23(1)

would fail to cover *obligors*, since obligors do not necessarily have to encumber their own property

interests to effectuate a transaction subject to rescission (*see* Part III, D, 1 *supra*).  Such a result is entirely inconsistent with the purpose of the MCCCDA.

209 MASS. CODE REGS. 32 qualifies the rescission right of obligors (by requiring them to have encumbered their ownership interest in the property) and imposes additional disclosure requirements on the creditor with respect to non-obligors (those, like the Debtor, who encumbered their interest in the dwelling but incurred no obligation on the transaction).  In so doing, the regulations create rights and liabilities unsupported by the statutory language of the MCCCDA.  The Supreme Judicial Court of Massachusetts has invalidated other regulations on similar grounds.  *See Massachusetts Hospital Association, Inc.* 412 Mass. at 342-43 (invalidating a regulation promulgated by the Department of Medical Security (the "DMS") that limited the amount of "bad debt" for which a hospital could receive reimbursement when statute merely authorized the DMS to establish "criteria" for assessing a hospital's collection efforts); *Smith v. Comm'r of Transitional Assistance*, 431 Mass. 638, 653-54 (2000) (invalidating a financial eligibility test promulgated by the Department of Transitional Assistance because it effectively bypassed the statutory factors to be considered when determining whether to extend a recipient's benefits).

In sum, 209 MASS. CODE REGS. 32's definition and use of the term "consumer" in connection with the right to rescind a consumer credit transaction exceeds the substantive rights and liabilities of "obligors" and "creditors" set forth in MASS. GEN LAWS ch. 140D by creating a category of persons entitled to rescind who are not "obligors":  those who gave the creditor a mortgage on the residence but did not become personally obligated in the transaction.  To the extent § 32 exceeds the statute, the regulation is infirm and will not be enforced against Wells Fargo.[14]  *See Purity Supreme, Inc. v. Attorney General*, 380

---

[14] In so ruling, I decline to give effect to only that portion of 209 MASS. CODE REGS. 32 that gives a rescission right to persons such as the Debtor and would require a creditor to provide notice of that right.  Nothing in this decision should be read to find any other infirmity in the regulations.

Mass. 762, 762 (1980) ("In our judicial review of the regulation, we do not concern ourselves with its

wisdom or expediency, but only with its validity and constitutionality.").

### 4.   Whether Relief is Available Under the TILA and Regulation Z

In addition to concluding that the Debtor is not entitled to relief under the MCCCDA because she

is not an "obligor," I find she would be unable to rescind under the TILA.  Two reasons compel me to

analyze the Debtor's rights under the TILA.  First, the TILA was intended to be the floor for consumer

protection laws, not the ceiling.[15]  Second, the MCCCDA provides that none of its regulations can result

in less stringent disclosure requirements than those required under the TILA and Regulation Z.  *See*

MASS. GEN. LAWS ch. 140D, § 3.  This provision suggests that Massachusetts courts ought to enforce

Regulation Z instead of 209 MASS. CODE REGS. 32 in instances where Regulation Z would require more of

creditors.

### (i)  Rescission under the TILA and Regulation Z

The Debtor's complaint would meet the same fate under the TILA's rescission scheme.  Section

1635(a) of the TILA, entitled "Right of rescission as to certain transactions," is substantively identical to

MASS. GEN. LAWS ch. 140D, § 10(a).  In interpreting the term "obligor" as it appears in 15 U.S.C. § 1635(a),

I would be guided by federal canons of statutory interpretation that are similar to those used by

Massachusetts courts.  *See, e.g., Gross v. FBL Fin. Servs.*, 557 U.S. 167, 175 (2009) ("Statutory

construction must begin with the language employed by Congress and the assumption that the ordinary

meaning of that language accurately expresses the legislative purpose." (internal quotation marks

omitted)); *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 60 (2007) (quoting *Inhabitants of Montclair*

---

[15] Chapter one of the TILA contains an "anti-preemption" provision, which states that the federal law "do[es] not
annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit
transactions, *except to the extent that those laws are inconsistent with the provisions of [the TILA] and then only to
the extent of the inconsistency*."  15 U.S.C. § 1610(a)(1) (emphasis added).  In other words, to the extent a
provision of the MCCCDA is inconsistent with the provisions of the TILA, the TILA will control.  *See Hollingworth v.
Beneficial Mass., Inc. (In re Hollingworth)*, 453 B.R. 32, 35 (Bankr. D. Mass. 2011).

*Twp. V. Ramsdell*, 107 U.S. 147, 152 (1883) for the proposition that the court must "give effect, if possible, to every clause and word of a statute"); *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning.").  For the reasons set forth in Part III, D, 1 *supra*, I would conclude that the term "obligor" as used in the TILA refers to persons who incur an obligation with respect to the transaction.

The TILA authorizes the Board of Governors of the Federal Reserve System (the "Board") to prescribe regulations to carry out its purposes.  15 U.S.C. § 1604(a).  The regulations "may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of [the TILA], to prevent circumvention or evasion thereof, or to facilitate compliance therewith."  *Ibid.*  Here, the relevant provisions of Regulation Z are identical to 209 MASS. CODE REGS. 32.  *Compare* 12 C.F.R. § 226.2 (defining "consumer"); 12 C.F.R. § 226.23 (giving each consumer whose ownership interest is subject to the security interest a right to rescind the transaction); *with* 209 MASS. CODE REGS. 32.02 (defining "consumer"); 209 MASS. CODE REGS. 32.23 (granting the same rescission right).  Therefore, Regulation Z clearly affords the Debtor, as a mortgagor, a right to rescind the Transaction.

The Debtor's right to rescind under Regulation Z is supported by the Board in its Official Commentary.[16]  Although I am directed to afford the Board's interpretation of the TILA considerable deference, *see Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565-66 (1980), constitutional constraints on executive authority supersede such deference where the intent of Congress is clear or the regulation

---

[16] Regarding a "consumer" the commentary provides: "For purposes of rescission under §§ 226.15 and 226.23, a consumer includes any natural person whose ownership interest in his or her principal dwelling is subject to the risk of loss.  Thus, if a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, A is a consumer for purposes of rescission, even if A is not liable, either primarily or secondarily, on the underlying consumer credit transaction."  12 C.F.R. Pt. 226, Supp. I (2011).

at issue is "arbitrary, capricious, or manifestly contrary to the statute."  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837842-844 (1984).

In this case, Congress's use of the term "obligor" and the legislative history relating to the rescission provision evidence a clear intent to protect the interests of consumers who incur an obligation with respect to the credit transaction (see Part III, D *supra*).  Even if Congress's failure to define "obligor" could be taken as an invitation to fill a legislative gap, *see Chevron*, 467 U.S. at 843-44, the Board's use of the term "consumer" in 12 C.F.R. § 226.23 is manifestly contrary to 15 U.S.C. § 1635. Like its Massachusetts counterpart, Regulation Z predicates a person's right to rescind on whether he or she has an ownership interest in the property subject to the security interest.  Moreover, it excludes "obligors" who have not encumbered their ownership interest.  To the extent 12 C.F.R. § 226.23(a) grants a right of rescission to a person who incurred no obligations on the transaction, it is an irrational construction of 15 U.S.C. § 1635(a) that does not bind this Court.  *See In re Stanley*, 315 B.R. at 615-16 (Bankr. D. Kan. 2004) (refusing to enforce a provision of Regulation Z that prohibited a court from equitably conditioning the voiding of a security interest upon notice of rescission when the plain language and legislative history of the TILA supported such equitable modification of the rescission procedure).  Accordingly, my analysis of Regulation Z would lead to the same conclusion I reached with respect to 209 Mass. Code Regs. 32 and I would refuse to allow the Debtor to proceed under federal law.

Although the Debtor argues for a "liberal construction" of the MCCCDA to better promote its "remedial purpose," any construction is necessarily circumscribed by the canons of statutory interpretation and the limits of regulatory rulemaking authority.  Deciding that the Federal Reserve Board's definition of "banks" subject to the Bank Holding Company Act went beyond the scope of the statutory definition and was therefore invalid, the Supreme Court explained:

> Application of "broad purposes" of legislation at the expense of specific provisions
> ignores the complexity of the problems Congress is called upon to address and the
> dynamics of legislative action.  Congress may be unanimous in its intent to stamp out
> some vague social or economic evil; however, because its Members may differ sharply

on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises.  Invocation of the "plain purpose" of legislation at the expense of the terms of the statute itself takes no account of the processes of compromise and, in the end, prevents the effectuation of congressional intent. . . . The statute may be imperfect, but the Board has no power to correct flaws that it perceives in the statute it is empowered to administer.  Its rulemaking power is limited to adopting regulations to carry into effect the will of Congress as expressed in the statute.

*Board of Governors of Federal Reserve System v. Dimension Fin. Corp.*, 474 U.S. 361, 373-74 (1986).

IV.     **CONCLUSION**

As the Debtor incurred no obligations with respect to the Transaction, she is not an "obligor" within the meaning of the MCCCDA and has no right to rescind the Transaction.  New Century had no duty of disclosure to the Debtor.  Consequently, the lending agreement is not subject to rescission by the Debtor.  Wells Fargo cannot be liable for damages, and the Debtor has failed to state a claim upon which relief may be granted.  A separate order will issue dismissing the adversary proceeding.

Date:  January 2, 2013

_____
Frank J. Bailey
United States Bankruptcy Judge